[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 30, 2003
THOMAS K. KAHN
CLERK

————————————————

No. 01-15127

————————————————

D.C. Docket No. 98-01276-CV-DLG

MERRILL STEVENS DRY DOCK CO.,

Plaintiff-Counter-Defendant-
Appellant-Cross-Appellee,

versus

M/V YEOCOMICO II, her engines, tackle,
apparel, equipment, etc., *in rem* and YII
SHIPPING COMPANY, LTD., in personam,

Defendants-Counter Claimants-
Appellees-Cross-Appellants.

————————————————

Appeals from the United States District Court for the
Southern District of Florida

————————————————

**(April 30, 2003)**

Before WILSON and FAY, Circuit Judges, and GOLDBERG[*], Judge.

———————————

[*] Honorable Richard W. Goldberg, Judge, United States Court of International Trade,
sitting by designation.

GOLDBERG, Judge:

Merrill Stevens Dry Dock ("Merrill Stevens") appeals the district court's Order Re: Pending Motions (August 1, 2001) (hereinafter "Findings II"), which reversed, in part, the district court's Findings of Fact and Conclusions of Law (December 6, 2000) (hereinafter "Findings I"). At issue is a Work Order and Ship Repair Contract (the "Contract") between Merrill Stevens and YII Shipping Company ("YII Shipping") for repairs to the M/V Yeocomico II (the "Ship"). The district court found that Paragraphs 5 and 6 of the Contract were ambiguous. Thus, the terms of the Contract were interpreted against Merrill Stevens, the drafter.

Merrill Stevens also appeals the Findings I award of $55,441.49 to YII Shipping for fire damage to the Ship caused by Merrill Stevens. Merrill Stevens also appeals the award of $64,865.92 in damages for loss of use of the Ship while the fire damage was repaired.

YII Shipping cross-appeals, arguing that the district court erred by not awarding YII Shipping lost profits of $343,939.00. Second, YII Shipping contests the district court's award to Merrill Stevens of pre-judgment interest of 18 percent under the Contract's terms.

For the reasons that follow, we reverse the district court and find that Paragraphs 5 and 6 of the Contract are not ambiguous; affirm the district court's award of damages to YII Shipping for the fire damage to the Ship; affirm the award for loss of use of the Ship during the Ship's fire damage repairs; affirm the district court's denial of damages to YII Shipping for future lost profits; and affirm the district court's determination to award Merrill Stevens pre-judgment interest of 18 percent.

## I. BACKGROUND

YII Shipping, a Bahamian cargo shipping company, contracted with Merrill Stevens for repairs of its Ship, M/V Yeocomico II. The Ship traveled between Port Dania, Florida and various ports in the Bahamas. The repairs were necessary in order to bring the Ship into compliance with United States Coast Guard Regulations, without which the Ship could not enter the United States. YII Shipping, by and through its president Lisbon Higgs, retained the services of Roy MacKeen of Bahamas Marine International, Inc. Higgs instructed MacKeen to "do what it takes" to bring the Ship into compliance with the Coast Guard's regulations.

Some time after Merrill Stevens began repair work on the Ship, MacKeen signed the Contract, which listed the repair work to be done. On the reverse side,

the Contract contained the exculpatory clauses, Paragraphs 5 and 6, that are at issue in this case.[2]  The exculpatory clauses state the following:

> Paragraph 5.  CONTRACTOR undertakes to perform the Servicing and haul and launch of the vessel, provide berthage, wharfage, towage, and other services and facilities only upon condition that it shall not be liable, directly or indirectly, in tort or contract except as expressly warranted, or otherwise to OWNER, the vessel, its charterers, underwriters, or any of their agents, servants or employees, or persons to whom they may be responsible, for any personal injury, death, or damage to the vessel, its cargo, equipment or movable stores, or for any consequences thereof, unless such personal injury, death or property damage, etc. is caused by CONTRACTOR's negligence, which negligence shall not be presumed but must be affirmatively established.  In no event, including the negligence and/or gross negligence and/or breach of contract, including express warranties, of CONTRACTOR, shall CONTRACTOR's aggregate liability to all such parties in interest for personal injury, death, or damage sustained by them, or any other type of damage exceed the sum of $1,000,000, and in no event shall CONTRACTOR be liable to any extent to the vessel, OWNER, charterers and/or underwriters, for the cost of defending any claims asserted by third parties, including attorney's fees, whether such actions shall be commenced by its employees or others.  No claim for damages for negligence or otherwise shall be valid unless such claim is presented to CONTRACTOR within sixty (60) days after delivery of the vessel or completion of the Servicing, whichever first occurs.  All limitations on CONTRACTOR's liability which are contained in this Work

---

[2]  Although YII Shipping claimed that MacKeen lacked authority to sign the Contract, it is uncontested that neither Higgs nor any other representative of YII Shipping informed MacKeen or Merrill Stevens of MacKeen's lack of authority to sign the Contract on behalf of YII Shipping.  YII Shipping also claimed that MacKeen lacked equal bargaining power in the formation of the Contract with Merrill Stevens.  However, MacKeen testified that he had been conducting business in the ship repair industry for over forty years, and had signed similar work repair contracts in the past with Merrill Stevens, and with his own clients when he previously owned a shipyard.

4

Order shall remain in full force and effect following delivery of the vessel to OWNER.

Paragraph 6. In no event shall CONTRACTOR be liable to any person for incidental or consequential damages, for any breach of contract or for any negligence on the part of CONTRACTOR which might have given rise thereto.

Some time after the Contract was signed and the repair work commenced, a fire was caused by two Merrill Stevens workers while they were performing welding work. The fire damaged the Ship's accommodation houses. In its Findings I, the district court determined that the fire was a proximate result of Merrill Stevens' negligence. As a result of the fire an additional eight weeks to repair the damage to the accommodation houses was necessary.[3] During the period of repair for the fire damage the Ship was out of service. While out of service, YII Shipping claimed that it had lost certain shipping routes to competitors that it could not reclaim when the repairs were completed.

Merrill Stevens commenced this action on June 5, 1998, claiming that YII Shipping failed to pay the balance for the repair work, and sued for prejudgment interest of 18 percent, as provided by the Contract. They also claimed that

---

[3] As was conceded by YII Shipping's Counsel at oral argument, YII Shipping could have but did not request permission from the U.S. Coast Guard to travel to a new repair company. Rather, it continued the Contract with Merrill Stevens through the completion of the necessary repair work.

Paragraphs 5 and 6 of the Contract precluded YII Shipping's recovery for incidental or consequential damages. YII Shipping claimed that the Contract's terms were void since Merrill Stevens breached the Contract by negligently setting fire to the Ship. Additionally, YII Shipping claimed that Paragraphs 5 and 6 of the Contract were ambiguous and, thus, unenforceable. Therefore, YII Shipping counter-sued for the fire damage to the Ship, lost profits sustained while the Ship underwent an additional eight weeks of repair, and lost profits sustained after the Ship returned to service.

In its Findings I, the district court found that the fire was caused by Merrill Stevens' negligence and as a proximate result of the fire, the Ship had to undergo an additional eight weeks of repair for the damaged accommodation houses. Finding Paragraphs 5 and 6 unambiguous, the district court awarded YII Shipping $55,441.49 in damages for the fire damage, and $64,865.92 in damages resulting from the loss of use of the Ship during the eight weeks of repairs.

The district court denied YII Shipping's claim for lost profits after the Ship returned to service for failure to prove the lost profits to a "reasonable certainty." Merrill Stevens was awarded prejudgment interest of 18 percent, as specified by the contract. Both parties moved for reconsideration and amendment.

6

Upon reconsideration, the district court issued its Findings II, which reversed, in part, its Findings I by finding Paragraphs 5 and 6 of the Contract ambiguous. Accordingly, the district court determined that Paragraphs 5 and 6 would be read against the drafter, Merrill Stevens. The district court affirmed the December 6 Order awarding Merrill Stevens prejudgment interest of 18 percent. Both parties appealed to this Court.

There are four issues on appeal: (1) whether the contract was unambiguous and thus enforceable, (2) whether the district court erred in awarding YII Shipping damages for the fire damage and damages for loss of use of the ship during the eight weeks of repair, (3) whether the district court erroneously failed to award YII Shipping damages for lost profits after the Ship was back in service, and (4) whether the district court erred by awarding Merrill Stevens prejudgment interest of 18 percent. This Court has jurisdiction pursuant to 28 U.S.C. §1292.

## II. STANDARD OF REVIEW

This Court reviews *de novo* the question of whether the written contract is ambiguous, the district court's conclusions of law and its application of the law to the facts. Da Cunha v. Standard Fire Ins. Company/Aetna Flood Ins. Program, 129 F.3d 581, 584 (11th Cir.1997); United States v. Thomas, 62 F.3d 1332, 1336

(11th Cir. 1995). We review any factual findings under a clear error standard. Godfrey v. BellSouth Telecoms, 89 F.3d 755, 757 (11th Cir. 1996).

## III. <u>DISCUSSION</u>

A. <u>Ambiguity of Paragraphs 5 and 6</u>

The first issue on appeal is whether the limited liability clauses, Paragraphs 5 and 6, of the Contract, are unambiguous, and thus enforceable. A limited liability clause is enforceable if it satisfies a three-step test set forth in <u>Diesel "Repower" Inc. v. Islander Investments Ltd.</u>, 271 F.3d 1318, 1324 (11th Cir. 2001). First, the limited liability clause must "clearly and unequivocally indicate the parties' intention." Second, "the limitation must not absolve the repairer of all liability and must still provide a deterrent to negligence." <u>Id</u>. Third, the parties to the contract must have "equal bargaining power." <u>Id</u>.

Plaintiffs make no allegations with merit as to the second and third steps of the <u>Islander</u> test. The second part of the test is easily satisfied since Merrill Stevens had a liability risk of up to $1,000,000 for its potential negligence. This Court has held that a risk of liability for as little as $300,000 is a sufficient deterrent of negligence. See <u>Alcoa Steamship Co. v. Charles Ferran and Co.</u>, 383

F.2d 46, 55 (5th Cir. 1967).[4]  With respect to the third part of the test, MacKeen's testimony at trial indicates that he was a businessman with bargaining power equal to that of Merrill Stevens.[5]  Therefore, the Court must only further address the first step of the test to determine whether Paragraphs 5 and 6 are unambiguous and thus enforceable.

"The initial question whether a contract is or is not ambiguous is itself one of law" for the court to determine.  Maccaferri Gabions, Inc. v. Dynateria Inc., 91 F. 3d 1431, 1439 (11th Cir. 1996).  In making that determination, "'a contractual provision should not be construed as being in conflict with another unless no other reasonable interpretation is possible.'"  Id. at 1440 (quoting United States v. Johnson Controls, Inc., 713 F.2d 541, 1555 (Fed. Cir. 1983)).  See also Johnson Controls v. Cedar Rapids, 713 F.2d 370, 374 (8th Cir. 1983) ("If two clauses of a contract appear to be in conflict, the preferred interpretation is the one that gives a 'harmonious interpretation' to the clauses.").  Therefore, "an ambiguity is not

---

[4]  Decisions rendered by the former Fifth Circuit prior to October 1, 1981 were adopted as binding precedent by the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981).

[5]  MacKeen testified that he had been conducting business in the ship repair industry for over forty years, and had signed similar work repair contracts in the past with Merrill Stevens, and with his own clients when he previously owned a shipyard.

invariably present when a contract requires interpretation." Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., 254 F.3d 987, 1004 (11th Cir. 2001).

Accordingly, this Court finds that Paragraphs 5 and 6 of the Contract are unambiguous since there exists a reasonable construction that renders the two paragraphs consistent. Paragraph 5 acknowledges Merrill Stevens' liability for incidental or consequential damages caused by Merrill Stevens' negligence where the negligence is affirmatively established. Paragraph 5 lists the people to whom its contents are directed, specifically the "owner, the vessel, its charterers, underwriters, or any of their agents, servants or employees, or persons to whom they may be responsible...." Additionally, Paragraph 5 limits Merrill Stevens' risk of liability to $1,000,000.

Paragraph 6, on the other hand, directs a limitation of Merrill Stevens' liability for incidental or consequential damages to "any person," a term of reference which is first introduced in Paragraph 6 and never mentioned in Paragraph 5. Thus, this Court interprets the term of reference, "any person," as used in Paragraph 6, to mean any person other than those listed in Paragraph 5.

In Michel v. Merrill Stevens Dry Dock Co., 554 So.2d 593 (Fla. 3d DCA 1989), the court held an exculpatory clause of a repair contract ambiguous. In the first sentence of the clause the contractor was absolved of liability to the owner for

10

ordinary negligence. The next sentence, however, acknowledged the contractor's potential aggregate liability to the owner for ordinary negligence. Sentences one and two of the exculpatory clause were therefore in direct conflict. Paragraphs 5 and 6 in this case are easily distinguishable from the single exculpatory clause in Michel since each paragraph directs its limitation of liability to a different group of people. Unlike the exculpatory clause in Michel, Paragraphs 5 and 6 can reasonably be rendered consistent. Therefore, they are unambiguous and enforceable. See Maccaferri Gabions, Inc., 91 F. 3d at 1440. Accordingly, Paragraph 5 of the Contract entitles YII Shipping to recover incidental or consequential damages resulting from Merrill Stevens' negligence up to the sum of $1,000,000.

B. Fire Damages and Loss of Use Damages

Merrill Stevens' second argument on appeal is that the district court improperly awarded YII Shipping damages for fire damage to the Ship and for loss of use of the Ship during the eight weeks of repair. The district court found that the damage to the Ship's accommodation houses was a result of Merrill Stevens' negligence. Further, as a result of the fire, YII Shipping incurred expenses

11

amounting to $55,441.49.[6] The district court also found that during the eight weeks the Ship was out of service for repair, YII Shipping's loss of use totaled $64,865.92.

Merrill Stevens does not dispute the district court's factual findings. Merrill Stevens contends only that Paragraphs 5 and 6 of the Contract preclude YII Shipping's recovery for fire damages and loss of use damages. We disagree. As aforementioned, Paragraphs 5 and 6 are unambiguous and allow YII Shipping to recover incidental or consequential damages caused by Merrill Stevens' negligence up to $1,000,000. Thus, the Contract does not bar YII Shipping's recovery of fire damages and loss of use damages.

In the alternative, Merrill Stevens argues that the economic loss doctrine prevents recovery of tort damages where an exculpatory clause of the contract precludes it. Since Paragraphs 5 and 6 of the Contract do not preclude recovery of incidental and consequential damages, this Court only looks to the terms of the contract to determine the damages to which YII Shipping is entitled. Thus, Merrill Stevens' alternative argument is without merit. Therefore, we affirm the district

---

[6] The fire damages, $55,441.49, awarded by the district court included costs incurred by YII Shipping for the crew's lodging and food, payment for which YII Shipping was contractually obligated. It also included the costs of docking the Ship at Port Dania while the Ship's accommodation houses were repaired, and the costs for renting replacement ships. Findings I at 14, 21.

court's award of fire damages of $55,441.49, and loss of use damages of $64,865.92.

C. Lost Profits

On cross-appeal, YII Shipping argues that the district court erred by failing to award lost profits from July 1998 through December 1999, the time period after the vessel returned to service. The district court concluded that YII Shipping failed to show these lost profits to a "reasonable certainty," because YII Shipping failed to consider "any extrinsic factors" that may have also impacted its profits during this time period.[7] The court distinguished the evidence presented by YII Shipping from the evidence presented in Miller Industries v. Caterpillar Tractor Co., 733 F.2d 813 (11th Cir. 1984) (awarding lost fishing profits to plaintiff-fishermen when defendant-engine manufacturer negligently failed to correct a defective engine installed on plaintiff's fish-boat). In Miller, plaintiffs based their estimation of lost profits on the profits of three other comparable vessels that were in service during their vessel's downtime. By doing so, plaintiffs met their burden of proof since the "comparison vessels were subject to the same factors, such as inclement weather, that would have affected the [plaintiff's vessel] had it been

[7] Such "extrinsic factors" include fluctuations in the weather and market changes. See Miller Industries v. Caterpillar Tractor Co., 733 F.2d 813, 822 (11th Cir. 1984). The district court held that YII Shipping's expert failed to take any of these other possible causes for profit loss into consideration.

13

able to fish." Id. at 822. In this case, however, YII Shipping based its calculations of lost profits on their performance from the previous year, 1997. Thus, the district court held that YII Shipping's failure to consider extrinsic factors made its calculations insufficient to satisfy the standard of "reasonable certainty." Therefore, the court denied YII Shipping damages for lost profits from July 1998 through December 1999.

The Court reviews the district court's account of the evidence under a clear error standard, and must affirm the district court's determination so long as it is "plausible in light of the record viewed in its entirety." Conagra Inc. v. Inland River Towing Co., 252 F.3d 979, 983 (8th Cir. 2001) (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74 (1985)).

We find no clear error in the district court's application of the reasonable certainty standard to the evidence presented. The district court's finding of insufficiency of the evidence presented on the issue of lost profits between the period of July 1998 and December 1999 is plausible. Thus, we must affirm the district court's denial of damages for lost profits for the period in question.

D. Prejudgment Interest

The final issue on appeal is whether the trial court erred by awarding Merrill Stevens prejudgment interest of 18 percent, the contractually agreed upon rate.

14

While YII Shipping acknowledges Merrill Stevens' right to pre-judgment interest, it claims that the district court should have based the award of pre-judgment interest on prevailing maritime rates, rather than the contractual rate. YII Shipping bases this argument on the grounds that the alleged ambiguity of Paragraphs 5 and 6 rendered the Contract, including its interest rate term, unenforceable. Since this Court finds that the Contract is unambiguous and enforceable, YII Shipping remains bound by the Contract's terms. See Islander, 271 F.3d at 1324. Even if this Court found Paragraphs 5 and 6 ambiguous, the unambiguous and independent terms remain enforceable. See Vanston v. Connecticut General Life Ins. Co., 482 F.2d 337, 342 (5th Cir. 1973) ("If a contract is severable — that is, susceptible of division and apportionment, having two or more parts not necessarily dependent on each other — the fact that one obligation is unenforceable does not prevent a recovery as to the other.").

In the alternative, YII Shipping argues that Merrill Stevens' negligence constituted a breach of contract, which nullified the Contract terms. This argument lacks merit. As noted by the district court:

> 'A material breach [of a contract] does not automatically and *ipso facto* end a contract. It merely gives the injured party the right to end the agreement...If he elects instead to continue the contract, the obligations of both parties remain in force and the injured party may retain only a claim for damages for partial breach.'

15

Findings II at 10 (quoting Dunkin' Donuts of America, Inc. v. Minerva, Inc., 956 F.2d 1566, 1571 (11th Cir. 1992)).

We agree with the district court that "it is factually clear that [YII Shipping] chose to utilize [Merrill Stevens] to complete the contract." Both the record and oral argument support this finding. In fact, YII Shipping conceded in oral argument that YII Shipping could have but failed to request the U.S. Coast Guard's permission to use a different repair company after the fire. Thus, we conclude that YII Shipping elected to continue the Contract with Merrill Stevens, and it remained bound by its terms. Accordingly, we affirm the district court's award of prejudgment interest of 18 percent.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the district court's determination on the issue of ambiguity. We find that Paragraphs 5 and 6 of the Contract are unambiguous. We AFFIRM the district court's judgment on the issues of damages and prejudgment interest.